UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, JOHN DOE, JAN DOE, JAMES DOE, AND JANET DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPE COD HEALTHCARE, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-10445-RGS |

**DEFENDANT CAPE COD HEALTHCARE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

I. THE AMENDED COMPLAINT .......... 2

II. STANDARD OF REVIEW .......... 4

III. ARGUMENT .......... 4

- A. Plaintiffs Do Not Plausibly Allege That CCHC Intended to Commit a Crime or Tort. .......... 5
- B. Plaintiffs Do Not Plausibly Allege an Independent Crime or Tort. .......... 11

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Analog Techs., Inc. v. Analog Devices, Inc.*,
105 F.4th 13 (1st Cir. 2024) ....................................................................................10

*Aspen Dental Mgmt., Inc.*,
No. 24-C-1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sept. 9, 2024).................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) .....................................................................................................4

*Blumofe v. Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)........................................................................................4, 7, 9

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................................................................................passim

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) ..........................................................................................4

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024).............................................................................6

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024)..........6, 8, 12

*Gay v. Garnet Health*,
No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024).............13

*In re DoubleClick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................................7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................................................................................12, 14

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ........................................................................................................15

*Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber I*),
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ......................................................................12

*Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber II*),
No. 2:23-cv-01159-TL, 2025 U.S. Dist. LEXIS 38654 (W.D. Wash. Mar. 4, 2025) .........12, 14

*Okash v. Essentia Health*,
No. 23-482 (JRT/LIB), 2024 U.S. Dist. LEXIS 53126 (D. Minn. Mar. 26, 2024)...................12

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ................................................9, 10, 13

*Rodriguez v. Fastmed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024) ..........................................................................6

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 101754 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) ..........................................................5, 6

*Sun West Mortg. Co. v. Flores*,
No. 15-1082 (GAG), 2016 U.S. Dist. LEXIS 31149 (D.P.R. Mar. 10, 2016) ............................7

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ...................................................................................5

*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)......................................................................................15

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014)...........................................................................7, 8, 9

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986)...........................................................................5, 7

*Williams v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024)...6, 12

**Statutes**

18 U.S.C. § 2510 *et seq.* .......................................................................................4

18 U.S.C. § 2511(1)(c) ..........................................................................................11

18 U.S.C. § 2511(2)(d) .....................................................................................4, 5, 14

18 U.S.C. § 2511(4)(a) .......................................................................................11, 15

18 U.S.C. § 2520 ...................................................................................................3

42 U.S.C. § 1320d-6 ..............................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................4

## INTRODUCTION

This case is one of dozens of putative class actions across the country and in Massachusetts that aims to impose massive liability on a non-profit healthcare system over the use of ubiquitous website analytics and marketing tools. Plaintiffs allege that Cape Cod Healthcare, Inc.'s ("CCHC") use of Meta and Google software (collectively, "AdTech") on its public website and patient portal resulted in both the criminal disclosure of information protected under the Health Insurance Portability and Accountability Act ("HIPAA") and violations of state law, which in turn trigger liability under the Electronic Communications Privacy Act ("ECPA").

Plaintiffs' ECPA claim is fatally flawed. ECPA contains a one-party consent exception, meaning that if a party to a communication intercepts that communication or discloses it to a third party, there is no ECPA violation. To circumvent this one-party consent exception, Plaintiffs must plausibly allege both that (1) CCHC intercepted Plaintiffs' communications for the purpose of committing a crime or tort, and (2) that crime or tort was distinct from the interception itself. Plaintiffs fail to do either.

First, Plaintiffs fail to allege that CCHC's intent at the time of the interception was to criminally violate HIPAA or to commit any tort. Critically, Plaintiffs must plausibly allege that CCHC's "primary motivation" for intercepting data was to commit a crime or tort – in other words, that this non-profit hospital system *intended to harm* its patients. Instead, Plaintiffs simply claim that CCHC acted to improve website efficiency and to promote advertising, neither of which qualifies as a criminal or tortious purpose. For the Court to find that Plaintiffs' claim falls within the ECPA crime-tort exception, it would have to accept an absurd theory, unsupported by Plaintiffs' actual allegations – that CCHC deployed AdTech with the distinct purpose of violating HIPAA or perpetrating a tort, that it intended to harm its patients, and that any technical or marketing benefits it received were only incidental to a desire to break the law. Second, Plaintiffs

fail to allege a tortious or criminal act *independent* of any alleged data transmission. Rather, they claim that the same act – the alleged simultaneous transmission of data to both CCHC and a third party – gives rise to both the ECPA violation and the separate crime or tort. Plaintiffs' allegations, therefore, do not satisfy ECPA's crime-tort exception to the one-party consent rule, and the Court should dismiss Plaintiffs' ECPA claim.

## I. THE AMENDED COMPLAINT

Defendant CCHC is the primary provider of healthcare services for residents of and visitors to Cape Cod. First Amended Class Action Complaint And Demand For Jury Trial ("Amended Complaint" or "FAC") ¶ 6. CCHC operates the only two acute care hospitals on Cape Cod, along with a series of urgent care and other medical facilities. *Id.* It also operates capecodhealth.org, a public website that is open to patients, their families and friends, and anyone else with internet access, as well as a password-protected patient portal. *See id.* ¶¶ 26, 29. Plaintiffs allege that, at indeterminate times, they used CCHC's public website to book appointments, pay bills, look for providers, research medications, and learn about various conditions. *Id.* ¶¶ 14-18. Plaintiffs also claim that they used the patient portal for some of the same tasks, like booking appointments and paying bills, as well as to check test results, medications, provider notes, and referrals. *Id.*[1]

The original named Plaintiff filed her Complaint against CCHC more than two years ago in Barnstable Superior Court, alleging, in her lead claim, that CCHC's use of AdTech on its website violated the Massachusetts Wiretap Act. In related cases filed against Beth Israel Deaconess Medical Center and New England Baptist Hospital, which proceeded upon the same

[1] CCHC denies that patients could book appointments or pay medical bills outside of separate websites managed by Epic (i.e., MyChart). CCHC also denies that any AdTech tools were installed in its patient portal. Those issues, however, are not the subject of this Motion to Dismiss, in connection with which CCHC has no opportunity to disprove Plaintiffs' factual allegations.

theory, the Supreme Judicial Court held that hospitals' use of AdTech did not violate the Massachusetts Wiretap Act as a matter of law. Plaintiffs – now consisting of five anonymous purported CCHC patients – responded by filing the Amended Complaint, abandoning the Massachusetts Wiretap Act claim and alleging (for the first time) that CCHC's use of AdTech violated ECPA.

This is one of at least 24 similar purported class actions against hospitals and other businesses currently pending in state and federal courts in Massachusetts. This proliferation of cases followed quickly on the heels of the 2022 $18.4 million settlement of a similar suit against Partners Healthcare (now Mass General Brigham) and Dana-Farber Cancer Institute. Plaintiffs in these cases seek to capitalize on ECPA's damages provision – which provides for $10,000 damages per violation – to impose potentially crippling liability on CCHC and other hospitals. *See* 18 U.S.C. § 2520.

The Amended Complaint devotes most of its 71 pages to generic descriptions of Meta AdTech and to allegations about CCHC's use of that AdTech on its public website. *See, e.g.*, FAC ¶¶ 33, 95-148, 151-59, 165-70, 180-83. In short, Plaintiffs claim that, in exchange for website analytics information and enhanced advertising services, CCHC permitted data generated through use of its public website or patient portal to be simultaneously transmitted to third parties like Google and Meta. *See, e.g., id.* ¶¶ 136-37, 164, 168, 203.

Plaintiffs do not, however, allege that CCHC disclosed social security numbers, financial account information, or dates of birth to third parties. Rather, the identifiers that are the basis for Plaintiffs' claims are internet protocol ("IP") addresses, "internet cookies," "browser-fingerprints," and "Facebook IDs." *Id.* ¶¶ 62-94. Nor do Plaintiffs allege that they suffered any

actual injury as a result of the alleged disclosures. Instead, they assert only that one Plaintiff noticed "online advertisements" as a result of their alleged public website and patient portal use. *Id.* ¶ 16.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), CCHC moves to dismiss Plaintiffs' ECPA claim in the Amended Complaint for failure to state a claim upon which relief may be granted. To survive a motion to dismiss, a claim must be "plausible on its face" and must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citations omitted). While a complaint need not plead "detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## III. ARGUMENT

Plaintiffs allege that CCHC violated ECPA, 18 U.S.C. § 2510 *et seq.*, by installing AdTech on its public website and patient portal that allowed the simultaneous transmission of users' communications to third parties (e.g., Meta and Google). FAC ¶¶ 230-49. To state a claim under ECPA, a Plaintiff must show "that a defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Blumofe v. Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003). But ECPA is a one-party consent statute: it is not unlawful for a person to intercept an "electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). That means, among other things, that any party to a communication (including its sender or recipient) unilaterally may allow a third party to access such communication, without the knowledge or consent of any other party to the communication. *See id.*

Plaintiffs admit that CCHC is the recipient of Plaintiffs' communications and would, therefore, generally be authorized to intercept these communications under ECPA's party exception. *See, e.g.*, FAC ¶¶ 19, 23-30, 32-33, 239-40 (stating that "[CCHC] is a 'part[y] to the communications' at issue"). Plaintiffs allege that CCHC is nonetheless liable because of ECPA's crime-tort exception to the one-party consent rule. *Id.* ¶¶ 240-49. To state a claim based upon the crime-tort exception, Plaintiffs must plausibly allege that CCHC (1) intended to commit (2) an independent crime or tort (3) at the time of the alleged interception. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also* 18 U.S.C. § 2511(2)(d). However, Plaintiffs fail to allege either that CCHC had the requisite intent or that CCHC committed a separate crime or tort. Plaintiffs' allegations therefore cannot plausibly fit within the crime-tort exception, and this Court should dismiss the ECPA claim.

### A. Plaintiffs Do Not Plausibly Allege That CCHC Intended to Commit a Crime or Tort.

To trigger ECPA's crime-tort exception, Plaintiffs must allege that the "primary motivation" or a "determining factor" in deploying the AdTech was to effectuate a crime or tort. *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 101754, at *15 (C.D. Cal. June 5, 2024) (quotation omitted), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024); *see also United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986). The mere allegation that an interception resulted in a criminal or tortious act does not suffice. *Caro*, 618 F.3d at 100; *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the] section 2511 [crime-tort exception] applies. Where the *purpose* is not illegal or tortious, but the means are, the victims must seek redress elsewhere.") (emphasis added).

At the motion to dismiss stage, courts have developed a few principles to ensure that the crime-tort exception does not swallow the one-party consent rule. First, where a defendant's "apparent purpose" is to collect information for "market research and consumer analysis," a plaintiff fails to plead the crime-tort exception. *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 U.S. Dist. LEXIS 66733, at *28 (N.D. Cal. Apr. 11, 2024) (holding that hospital system's purpose in collecting information for marketing via third-party software was "solely for the benefit of [the hospital] in better reaching and serving its patients," not to commit a tort). Marketing, website analytics, and targeted advertising are non-criminal, non-tortious purposes. *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 U.S. Dist. LEXIS 178452, at *12 (D. Ariz. Sept. 30, 2024).

Second, alleging that a defendant intended to reap a financial benefit from the alleged interception is not sufficient to trigger the crime-tort exception. *Amgen Inc.*, 2024 U.S. Dist. LEXIS 101754, at *15-16 ("While Plaintiffs aver that Defendant's motivations were to improve their marketing and advertising efforts [], the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally.") (citation omitted); *see also TMC Health*, 2024 U.S. Dist. LEXIS 178452, at *12 (rejecting crime tort-exception where complaint alleged that healthcare system used technology to increase profits and to improve website analytics); *Rodriguez v. Fastmed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (dismissing ECPA claim because allegations that "[defendant] intercepted and disclosed [plaintiff's] information to Meta for commercial use or gain [] does not equate to [defendant] intercepting and disclosing [plaintiff's] information 'for the purpose of committing any criminal or tortious act'") (citation omitted); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (dismissing ECPA claim because Google's purpose in

offering its advertising and analytics products "has plainly not been to perpetuate torts on millions of Internet users, but to make money") (citation omitted); *Sun West Mortg. Co. v. Flores*, No. 15-1082 (GAG), 2016 U.S. Dist. LEXIS 31149, at *13-14 (D.P.R. Mar. 10, 2016) ("Allegations that [defendant] . . . 'intends to benefit economically from the confidential information [defendant] intercepted' are insufficient to satisfy the pleading requirements."); *In re DoubleClick Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (dismissing ECPA claim where defendant's motivations were "licit and commercial" such that as a matter of law, plaintiff failed to allege defendant acted with a tortious purpose).

Finally, First Circuit courts have explained that the intent requirement must be "construed narrowly" and focused on a defendant's intent at the time of the interception. *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (citations omitted); *Vest*, 639 F. Supp. at 907 (explaining that while one of defendant's purposes in making a tape recording was to advance a criminal conspiracy, the other purpose of self-protection was "not done for the purpose of causing injury in the relevant legal sense" because "[i]njury is not the actor's objective but only an incidental consequence of an act done for a permissible purpose"); *see also Pharmatrak, Inc.*, 329 F.3d at 23 ("As used in [ECPA], the term 'intentional' is narrower than the dictionary definition of 'intentional.'") (citation omitted). The alleged conduct must have been a defendant's "conscious objective." *Pharmatrak, Inc.*, 329 F.3d at 23 (citation omitted). Accordingly, "[a]n impermissible purpose is properly confined to situations where the recording party intended to harm the recorded party, either through blackmail, threats or public embarrassment." *McHugh*, 57 F. Supp. 3d at 100. The act of recording alone therefore does not provide the requisite intent. *Caro*, 618 F.3d at 100. Critically, alleging that a crime or tort resulted from an interception does not satisfy a plaintiff's

burden to plead a criminal or tortious intent. *Id.*; *Kaiser Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, at *25-28.

Here, each of these principles weighs in favor of dismissal. Plaintiffs must – but do not – plausibly allege that CCHC, a non-profit hospital system, installed AdTech for the distinct purpose of violating HIPAA or perpetrating a tort, like invasion of privacy or breach of confidentiality – i.e., that CCHC deployed AdTech because it "intended to harm" its patients and other visitors to its website. *See McHugh,* 57 F. Supp. 3d at 100. Instead, they allege only that CCHC used AdTech tools, which are commonplace in both the healthcare industry and on websites generally, to operate more effectively. *See* FAC ¶¶ 136-37 (detailing that businesses using AdTech derive performance metrics and build custom audiences for advertising purposes); 138 (alleging that data is transmitted "when a user on *many of these hospital websites*" clicks on a button to schedule an appointment) (emphasis added); 140 (alleging CCHC is "*among the hospital systems* who have embedded Meta Pixel on their websites") (emphasis added).

CCHC provides necessary medical services for a seasonal community and year-round population in a portion of Massachusetts with few other options for healthcare services. The only plausible inference one can draw about CCHC's purpose from the Amended Complaint is that, like other hospitals, CCHC used AdTech on its website as part of a marketing effort designed to educate and advise prospective patients about the medical services that they may need. No well-pleaded factual allegation in the Amended Complaint fairly suggests that CCHC deployed AdTech for the purpose of deliberately harming its patients (or other visitors to its website) by committing a crime or tort. At most, Plaintiffs allege a financial motive for deploying the AdTech, which is not the same as a criminal or tortious motive. *See, e.g.*, FAC ¶¶ 4, 104, 118, 157, 203.

Some courts in other Circuits have declined to follow the principles described above in AdTech-based cases. Those decisions, however, are not grounded in the language of ECPA and cannot be reconciled with the First Circuit's interpretation of its provisions. For example, in *Aspen Dental*, the court held that marketing and boosting revenues "cannot be detached from the reality" that the defendant achieved these purposes by disclosing plaintiffs' data. *Aspen Dental Mgmt., Inc.*, No. 24-C-1404, 2024 U.S. Dist. LEXIS 161090, at *8-9 (N.D. Ill. Sept. 9, 2024). *Aspen Dental*'s application of the crime-tort exception would cover every case where data is intercepted and disclosed, regardless of the interceptor's purpose. This interpretation of the crime-tort exception cannot be squared with First Circuit authorities requiring the exception to be applied narrowly to cases where the defendant deliberately sought to harm the plaintiff. *See Pharmatrak, Inc.*, 329 F.3d at 23; *McHugh*, 57 F. Supp. 3d at 100.

Similarly, the court in *Prime Healthcare* held that "a monetary purpose does not insulate a party from liability under the ECPA" where defendant's "financial gain was contingent on disclosing HIPAA-protected information to third parties." *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *18-19 (C.D. Cal. Jan. 13, 2025). But the court failed to connect its interpretation of the crime-tort exception to ECPA's text, which focuses on the purpose of the interception, not the effect. These cases presume an intent to violate HIPAA from the fact that the interception allegedly led to a HIPAA violation, but they include little discussion of the defendants' purpose aside from financial motivations. In *Prime Healthcare*, the court reasoned that "[l]egitimate objectives, like increasing revenue, do not shield a party from liability for crimes or torts committed in the process." *Id.* at *19. But whether a crime or tort is committed in the process is not the appropriate inquiry – the statute explicitly focuses on a defendant's purpose in intercepting the communication and requires that the purpose be criminal or tortious.

*Prime Healthcare* further misconstrues the import of a primarily financial purpose. The court pointed to the example of blackmail to support its conclusion that financial motives cannot immunize an intercepting defendant, noting that blackmail typically involves a financial motive. *Id.* at *19-20. In that example, however, it is the defendant's purpose to commit the separate crime of blackmail that supplies the necessary intent. That the defendant decided to commit blackmail to make money is beside the point. Here, while Plaintiffs' Amended Complaint uses the statutory language "for the purpose of committing . . . crimes and torts," their actual allegations describe CCHC's underlying purpose as obtaining marketing services, which is neither criminal nor tortious. *See, e.g.*, FAC ¶ 245 (alleging that CCHC accessed and disclosed information "for the purpose of committing the crimes and torts described herein *because it would not have been able to obtain the information or the marketing services if it had complied with the law*") (emphasis added).

Furthermore, the contrary decisions fail to consider the canon that courts should avoid statutory interpretations that produce absurd results if an alternative interpretation "consistent with legislative purpose [is] available." *Analog Techs., Inc. v. Analog Devices, Inc.*, 105 F.4th 13, 19 (1st Cir. 2024) (citations omitted). Imposing ECPA liability where a defendant does not have the requisite purpose, or conflating purpose with the ultimate result, creates the absurd situation of obviating the crime-tort exception's intent requirement and, as is discussed below, making felons out of potentially thousands of healthcare employees. The canon against absurdity exists for cases like this one.

There are only two competing sets of inferences that the Court could draw from the Amended Complaint. The Court could conclude that CCHC, like other Massachusetts hospitals, deployed AdTech on its website for the primary purpose of improving the user experience and,

perhaps, competing for patients. Plaintiffs' alternative set of inferences runs as follows: (1) CCHC's and other Massachusetts hospitals' "primary purpose" in deploying AdTech was to violate HIPAA or commit torts by disclosing confidential information to Google and Facebook; (2) the hospitals set out with the "conscious objective" of harming their patients and revealing sensitive patient information to Google and Facebook; and (3) the marketing benefits the hospitals received in return were merely incidental to their desire to commit a crime or tort.

On Plaintiffs' theory, the hospitals, their officers, marketing team, and information technology personnel risked up to five years in prison solely for the sake of sharing data with Facebook and Google. *See* 18 U.S.C. § 2511(4)(a). Plaintiffs' theory requires the Court to accept that CCHC's purpose was to both (1) commit a felony HIPAA violation or a state-law tort by deploying AdTech that disclosed allegedly protected information, and (2) commit a second felony on top of that – an ECPA violation – for each and every simultaneous transmission. *See* 18 U.S.C. § 2511(1)(c); 42 U.S.C. § 1320d-6. Plaintiffs' theory would make felons out of hundreds or thousands of healthcare employees and impose crippling civil liability on non-profit healthcare systems and other businesses. For example, at $10,000 per violation, a lightly trafficked hospital website with 10,000 visitors over a two-year period would face $100 million in liability. This is the kind of result that the canon against absurdity is designed to avoid.

In sum, Plaintiffs fail to allege that CCHC had – at the time of interception – a primary purpose to criminally or tortiously injure Plaintiffs. Accordingly, Plaintiffs fail to meet the crime-tort exception to the one-party consent rule and CCHC is not liable under ECPA.

### B. Plaintiffs Do Not Plausibly Allege an Independent Crime or Tort.

Plaintiffs face yet another hurdle in their effort to invoke ECPA's crime-tort exception: they must allege that CCHC intended to commit a crime or tort that is independent from the interception itself. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125,

145 (3d Cir. 2015) ("[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording.") (citation omitted); *TMC Health*, 2024 U.S. Dist. LEXIS 178452, at *10 ("[The] criminal or tortious purpose must be separate and independent from the act of the recording.") (citation omitted). Put differently, the interception that ultimately constitutes the ECPA violation cannot also be the same act that underlies the alleged crime or tort. *Kaiser Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, at *27.

Where, as here, the alleged recording and the transmission of electronic communications to a third party are accomplished through the same act, the alleged transmission does not constitute an independent crime or tort. *Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber I*), 733 F. Supp. 3d 1072, 1095-1096 (W.D. Wash. 2024) (holding that a plaintiff must "plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission"). Allegations that a defendant violated HIPAA or committed a tort through a simultaneous interception and disclosure do not qualify as a sufficiently "discrete subsequent tortious or illegal act." *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 U.S. Dist. LEXIS 53126, at *11-12 (D. Minn. Mar. 26, 2024); *see also Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber II*), No. 2:23-cv-01159-TL, 2025 U.S. Dist. LEXIS 38654, at *36-39 (W.D. Wash. Mar. 4, 2025) (dismissing ECPA claim where the "amended pleadings still allege that the technologies installed by Defendant contemporaneously transmit Plaintiff's communications to third parties" and where "Plaintiff's own argument demonstrates that the alleged tortious or criminal use of the acquired communications is the disclosure itself").

Plaintiffs do not allege that CCHC recorded their communications and then used that recording for a later crime or tort. Rather, Plaintiffs allege an ECPA violation based on the

simultaneous transmission of data from Plaintiffs' browsers to both CCHC and third parties. *See, e.g.*, FAC ¶¶ 1-5, 31-61, 110, 141 ("When a patient entered their personal information through Defendant's websites that incorporate Meta Pixel . . . those communications are immediately and instantaneously routed to Facebook via the Meta Pixel. The acquisition and disclosure of these communications occurs contemporaneously with the transmission of these communications by patients."), 145, 230-49.

While the Amended Complaint focuses on alleged HIPAA violations as the basis for Plaintiffs' ECPA crime-tort exception claim, *see id.* ¶¶ 3-5, 20-33, 41, 51, 54-56, 60, 62-67, 91, 93-94, 104, 134-171, 186, Plaintiffs also briefly allege various torts arising from the same alleged conduct, including invasion of privacy, breach of confidentiality of medical records, and breach of the common law duty of confidentiality. *See id.* ¶¶ 20, 176, 186, 222, 241. All of these claims fail for the same reason – the simultaneous transmission of data cannot be the basis for the ECPA violation *and* the separate, underlying crime or tort. *See Caro*, 618 F.3d at 100-101 (holding, under Connecticut law, that where plaintiff pled invasion of privacy through intrusion upon seclusion, the alleged invasion "occurs through the act of interception itself" and other categories of invasion of privacy require the tortfeasor "to take an affirmative step [] beyond the recording").

Some courts have reached the contrary conclusion – that the simultaneous disclosure of protected information is a sufficient secondary action that falls within the crime-tort exception. *See, e.g.*, *Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *16-17 (holding that an alleged HIPAA violation stemming from defendant's intentional disclosure of protected information constituted a "further impropriety" independent from the interception); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *7-9 (S.D.N.Y. Sept. 16, 2024) (holding

that transmission of identifiers and the content of communications to third parties is a sufficient independent action secondary to the interception).

But, as with the contrary cases on criminal or tortious purpose, none of these cases anchor their reasoning in the statutory text. The statute's plain language requires the defendant to commit the interception for the purpose of committing a *later* crime or tort. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ."). The past tense of "intercepted" necessitates a temporal component where the interception precedes the alleged crime or tort. *See id.*; *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 ("[T]he criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits."); *Caro*, 618 F.3d at 99-100 ("There is a temporal thread that runs through the fabric of the statute and the case law. At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act. Merely intending to record the plaintiff is not enough. If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act."). As the court in *Nienaber II* observed, none of these cases "evaluate the distinction between the interception and transmission of data." *Nienaber II*, 2025 U.S. Dist. LEXIS 38654, at *37-38. Where the interception and the transmission occur at the same time – as Plaintiffs repeatedly allege – the disclosure (inherent in the transmission) cannot be separate from the interception.

Furthermore, the rule of lenity supports CCHC's interpretation of the statute. The rule of lenity requires that a "grievous ambiguity in a penal statute [be] resolved in the defendant's favor." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). The rule of lenity also pertains to civil claims arising out of statutes with criminal applications. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."). Because ECPA carries both civil and criminal penalties, 18 U.S.C. § 2511(4)(a), should the Court determine that the clause "intercepted for the purpose of committing any criminal or tortious act" presents a grievous ambiguity, it should resolve that ambiguity in CCHC's favor and conclude that the alleged interception must be separate from the criminal or tortious act.

Plaintiffs therefore fail to plead an ECPA violation because the Amended Complaint does not plausibly allege either that CCHC's purpose was to commit a crime or tort, or that the alleged crime or tort was independent from the alleged interception of Plaintiffs' communications.

## CONCLUSION

For these reasons, CCHC asks this Court to dismiss the Amended Complaint's ECPA claim with prejudice.

Respectfully Submitted,

CAPE COD HEALTHCARE, INC.,

*By its attorneys,*

*/s/ Adam J. Bookbinder*

Adam J. Bookbinder (BBO No. 566590)
Samuel N. Rudman (BBO No. 698018)
Mark McPherson (BBO No. 698465)
April C. DeLuca (BBO No. 709101)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
abookbinder@choate.com
srudman@choate.com
mmcpherson@choate.com
adeluca@choate.com

Dated: March 17, 2025

## CERTIFICATE OF SERVICE

I, Adam J. Bookbinder, do hereby certify that on this 17th day of March, 2025, I caused the foregoing document to be filed through the ECF system and to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and to be served via electronic mail upon counsel of record for the Plaintiffs.

*/s/ Adam J. Bookbinder*
Adam J. Bookbinder

Dated: March 17, 2025