IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, JOHN DOE, JAN DOE, JAMES DOE, AND JANET DOE, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>CAPE CODE HEALTHCARE, INC,<br><br>                      Defendant. | Case No.: 1:25-cv-10445 |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS</u>**

Plaintiffs hereby move this Court for an order allowing them to proceed with and prosecute this action using the pseudonyms Jane Doe, John Doe, Jan Doe, James Doe, and Janet Doe. Plaintiffs bring this action to protect their privacy rights in their private health information, and in so doing fall within each of the "four general categories of exceptional cases in which party anonymity ordinarily will be warranted." *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022). Moreover, no prejudice to Defendant would result from their anonymity, as Plaintiffs will share their identities with Defendant under an appropriate protective order. Plaintiffs therefore respectfully request that the Court allow them to proceed under the pseudonym "Jane Doe."

## BACKGROUND

Plaintiffs are or have been patients of Cape Cod Healthcare, Inc. ("Cape Cod"). ECF No. 1-82 ¶¶ 7–11; 14–18.

Plaintiff Jane Doe is a patient of Defendant who has received treatment from Defendant at Cape Cod Hospital. *Id.* at ¶ 14. Since at least 2021, Plaintiff Jane Doe visited

1

Defendant's website at www.capecodhealth.org regularly to search for a doctor and look up treatments for her medical conditions. *Id.* Among other things, she has used Defendant's Website to research Mohs surgery for skin cancer. *Id.* She has also used Defendant's patient portal to review test results, including x-rays and ultrasounds, review summaries of visits from her doctor, and check referrals. *Id.* When doing so, she entered identifying information and information related to her medical condition and doctor, including queries about treatment for skin cancer. *Id.*

Plaintiff John Doe has been using Defendant's patient portal consistently for approximately the past six years. *Id.* at ¶ 15. He has used it to check medications, pay bills, and check labs and other results. *Id.* Such activities related to his treatments for knee surgery and to have a stent put in his heart. *Id.* When doing so, he entered identifying information and information related to his medical condition and doctor, including queries about his heart-related health issues. *Id.*

Plaintiff Jan Doe has also been using Defendant's website and accessing Defendant's patient portal for several years. *Id.* at ¶ 16. She used the website to find providers, schedule appointments, pay for medical services, and research treatments. *Id.* Specifically, she researched weight loss drugs, knee replacement recovery, and mammograms. *Id.* She would use the patient portal to check lab results for biopsies and bone density tests. *Id.* When doing so, she entered identifying information and information related to her medical condition and doctor, including queries about knee replacement surgeries and recovery. *Id.* After using Defendant's Website and patient portal she noticed online advertisements related to weight loss and knee replacement-related pain. *Id.*

Plaintiff James Doe similarly used Defendant's website over the past several years to research treatments available from Defendant, including through his primary care physician and

2

cardiologist. *Id.* at ¶ 17. He has also used the patient portal regularly in the past several years to follow up on treatment he received from Defendant. *Id.* Among other things, he used the portal to review information about tests that he underwent at Cape Cod Hospital for his heart condition. *Id.* When doing so, he entered identifying information and information related to his medical condition and doctor, including queries about his heart condition. *Id.*

Plaintiff Janet Doe has been using Defendant's website for at least the past seven years. *Id.* at ¶ 18. She has used it to find new providers, to search for medications, to learn more about COVID-19, to book appointments, and to research gastroenterology and dermatological conditions. *Id.* She further used the patient portal for tasks including looking at test results and labs and making appointments. *Id.* When doing so, she entered identifying information and information related to her medical condition and doctor, including queries about her dermatological and gastroenterological conditions. *Id.*

Each plaintiff alleges that Cape Cod installed tracking pixels on its website that transmit patients' identities and personal health information to Facebook, Google, and other third parties without consent. *Id.* at ¶ 3. Facebook and other third parties use this sensitive health information to target Cape Cod patients with advertisements. *E.g., id.* at ¶¶ 165–66. Plaintiffs allege that Cape Cod's conduct violates its patients' and prospective patients' statutory and common-law privacy rights. *Id.* at ¶¶ 230–320. They bring this action under pseudonyms to prevent further violations of their privacy and of those similarly situated to them.

Before removing to federal court, Cape Cod opposed Plaintiff Jane Doe's request in state court to protect her name from public disclosure in accordance with Massachusetts' statutory protections of the confidentiality and privacy protections of medical information. Ex. 1 (motion for impoundment citing G.L. c. 272, § 99 (Interception of Wire and Oral Communications), G.L.

c. 214, § 1B (Right to Privacy), and G.L. c. 111, § 70E (Patients' and Residents' Rights)); Ex. 2 (opposition). After briefing and argument, the state court granted the motion for impoundment, finding that medical privacy interests warranted use of a pseudonym. Ex. 3 ("good cause for impoundment of the plaintiff['s] name has been shown by the movant to protect the plaintiff['s] interest in their private, sensitive and confidential medical records.").

## LEGAL STANDARD

While federal courts maintain a "strong presumption against the use of pseudonyms in civil litigation," *Does 1-3 v. Mills*, 39 F.4th 20, 25, 72 (1st Cir. 2022), a district court "enjoys broad discretion to quantify the need for anonymity in the case before it." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 72 (1st Cir. 2022). "This broad discretion extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." *Id.*

There are "four general categories of exceptional cases in which party anonymity ordinarily will be warranted." *Id.* at 71. These categories are: (1) cases in which disclosure of the would-be Doe's identity would "cause [] unusually severe harm"; (2) "cases in which identifying the would-be Doe would harm 'innocent non-parties'"; (3) "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; and (4) "suits that are bound up with a prior proceeding made confidential by law." *Id.* at 71.

The district court determines whether the case before it fits into one of the four categories. If so, "party anonymity ordinarily will be warranted." *Id.* at 71. Moreover, "it [also] is possible that a party whose case for pseudonymity appears weak when each [category] is analyzed separately may nonetheless make a persuasive showing when multiple [categories] are implicated," and anonymity will be warranted. *Id.* at 72. "Otherwise, the presumption against pseudonymous litigation will prevail, at least absent the 'rare' and 'exceptional' case not foreseen

4

in *Doe v. MIT*." *Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023).

## ARGUMENT AND AUTHORITIES

The Court should grant Plaintiffs leave to proceed under pseudonyms because the Plaintiffs fit in each of the four categories identified by *Doe v. MIT*, and the Does' medical privacy interests strongly outweigh the presumption of disclosing the plaintiffs' names.

First, this case fits into each of the four categories where "party anonymity ordinarily will be warranted." Public disclosure of private medical conditions and treatment will impose undue stress and embarrassment on the Plaintiffs, the type of physical or psychological harm that courts should avoid. Likewise, to the extent the plaintiffs suffer from hereditary conditions, exposing their identities also exposes innocent non-parties—their relations—to disclosure of their relations' medical profiles, such as predisposition to the same conditions. There would be a chilling effect to litigation against healthcare providers violating their patients' privacy rights, were plaintiffs who were subjected to unauthorized disclosure of their medical conditions required to broadcast their medical conditions in order to seek relief. Finally, Massachusetts has an interest in protecting its residents' private medical information, and this lawsuit is bound up with a prior determination at the state court level that such interests warrant using a pseudonym.

Moreover, the public's interest in open courts will not be compromised if Plaintiffs proceed under pseudonyms, as their identities and individual circumstances are not central to understanding this litigation. And Defendant will not be prejudiced because Plaintiffs will privately disclose their names to defense counsel, subject to an appropriate protective order.

**A. This case fits in each of the four *Doe v. MIT* categories where party anonymity will ordinarily be warranted.**

**1. Disclosure of the Does' names would cause unusually severe harm.**

The first paradigm warranting pseudonyms involves litigants who reasonably fear that

disclosure of their identities will cause them "unusually severe harm (either physical or psychological)." *MIT*, 78 F.4th 38 at 71. This lawsuit is about the improper disclosure of "intimate medical details," the unauthorized exposure of which is a severe harm. *Doe v. United States*, No. 1:24-CV-11445-JEK, 2024 WL 4495107, at *2 (D. Mass. Oct. 15, 2024). For Jane Doe, this involves details about her cancer treatment. ECF No. 1-82 ¶ 14. For John, it includes details about placement of a heart stent and more broadly his heart-related health issues. *Id.* at ¶ 15. For Jan, it is about weight loss treatment, mammograms, and biopsies. *Id.* at ¶ 16. For James, it is his heart condition. *Id.* at ¶ 17. For Janet, it is about gastroenterology and dermatology conditions. *Id.* at ¶ 18. Having to expose these "intimate medical details" to the public would be distressing and in some cases potentially embarrassing. *See, e.g.*, *Doe v. Trustees of Boston Coll.*, No. 23-CV-12737-ADB, 2024 WL 816507, at *3 (D. Mass. Feb. 27, 2024) ("revealing Doe's identity would cause at least psychological harm by unnecessarily making public his medical conditions"). Those with heart stents and gastroenterology issues do not need the added stress of public scrutiny of their health. *See, e.g.*, *Doe v. United States*, No. 1:24-CV-11445-JEK, 2024 WL 4495107, at *2 ("Doe has alleged that revealing her identity would result in the disclosure of intimate medical details, including the nature of her surgeries in Colombia . . . She further alleges that disclosure of her identity would risk further exacerbating these conditions"). To avoid unusually severe harm, pseudonyms are warranted.

### 2. Disclosure of Does' names would harm innocent non-parties.

The second paradigm involves cases in which identifying the would-be Doe would harm "innocent non-parties." *MIT*, 46 F.4th at 71. Associating intimate medical details such as cancer and heart conditions with specifically named individuals also has the potential to associate intimate medical details with those close to them who are not parties to this lawsuit—family members

sharing common genetics. These non-parties should not have to suffer exposure of their medical predispositions because Cape Cod shared their relatives' medical information without informed consent.

### 3. Disclosure of Does' names would chill future litigants trying to stop their medical providers from sharing medical information without authorization.

The third paradigm concerns "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *MIT*, 46 F.4th at 71. Classic examples of this paradigm include "cases involving 'intimate issues such as ... bodily autonomy, [and] medical concerns.'" *Id.* (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). This case involves each Doe's personal medical details. Public disclosure of each of their names will deter similarly-situated patients from bringing suit against those with access to their medical information for serious breaches of care and trust. *Doe v. United States*, No. 1:24-CV-11445-JEK, 2024 WL 4495107, at *2 (D. Mass. Oct. 15, 2024) (case "involves Doe's personal medical details. The Court agrees that public disclosure of Doe's identity could deter similarly situated transgender individuals, who experience disproportionate rates of sexual violence,[] from bringing suit against law enforcement officials for serious misconduct and from seeking redress for unwanted sexual contact.").

### 4. This suit is bound up with a prior proceeding made confidential by law.

A state-created regime of confidentiality is due some respect in the federal system. *Lisbon*, 78 F.4th at 46–47. Each plaintiff is a Massachusetts resident. And Massachusetts residents have a right to the privacy and confidentiality of their medical information, a right which is protected by statute, including G.L. c. 214, § 1B (Right to Privacy), and G.L. c. 111, § 70E (Patients' and Residents' Rights). Jane Doe invoked exactly these rights in a prior motion for impoundment. Ex. 1 at 2. The state court agreed that these interests warrant the use of a pseudonym. Ex. 3. To continue

to protect that prior-recognized confidentiality, this Court should hold likewise.

In short, each of the four categories identified by the First Circuit in *MIT* is implicated here. Pseudonyms should be allowed.

### B. The need for anonymity ultimately outweighs the public interest in disclosure.

Since the *MIT* categories call out those circumstances where the Court is justified in exercising its "broad discretion" to the "ultimate determination as to whether th[e] need [for party anonymity] outweighs the public's transparency interest," it is worth highlighting how preserving Plaintiffs' anonymity here strikes the right balance. *MIT*, 46 F.4th at 71.

The very core of Plaintiffs' claims is that Cape Cod is unlawfully disclosing information regarding their identities and medical treatment to third parties such as Facebook and Google. That private information has value in not being known. And it is an invasion of statutory and common law rights for Cape Cod to disseminate the Plaintiffs' identities and medical treatment in this way. Forcing the Plaintiffs to publicly disclose their names essentially endorses Cape Cod's misconduct.

On the other side of the ledger, the public interest will not be hindered if Plaintiffs proceed under pseudonyms. The public need not know Plaintiffs' names to understand the issues of public importance in this case, which will largely turn on Cape Cod's common practices and procedures. *See Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015) ("There is nothing about the plaintiffs' identities that makes it critical to the working of justice to reveal those identities. Anonymity, in other words, does not in this case threaten the principle of open courts."). Allowing Plaintiffs to proceed under pseudonyms will reduce the need to seal material filed on the docket, which will increase the provision of relevant and useful information about Defendant's privacy practices to the public. Proceeding anonymously thus actually enhances the public's view of the important legal and factual issues in dispute here.

Finally, Cape Cod will not be prejudiced by keeping the plaintiffs' identities confidential in public filings. Does have been working with Cape Cod regarding the terms of a protective order that will enable Cape Cod to identify the identities of the Plaintiffs.[1]

## CONCLUSION

Plaintiffs fit into each of the four categories the First Circuit has indicated warrant use of pseudonyms. Moreover, the interest in protecting Plaintiffs' medical privacy outweighs the interest in disclosure their names publicly. The Plaintiffs therefore ask the Court to permit them to proceed under pseudonyms.

Respectfully submitted,

/s/ *J. Tucker Merrigan*
J. Tucker Merrigan, BBO# 681627
Ryan M. Hawkins, BBO# 686289
Erin E. McHugh, BBO# 703701
**SWEENEY MERRIGAN LAW**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com
rmh@sweeneymerrigan.com
emchugh@sweeneymerrigan.com

Foster C. Johnson (*pro hac vice forthcoming*)
David Warden (*pro hac vice forthcoming*)
Nathan Campbell (*pro hac vice forthcoming*)
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 -Phone
(713) 655-0062 – Fax
fjohnson@azalaw.com
dwarden@azalaw.com
ncampbell@azalaw.com

---

[1] Likewise, Plaintiffs propose submitting their names to the Court in camera and under seal in accordance with the First Circuit's holding to permit a recusal check. *MIT*, 46 F.4th 61 at 77.

Seth Meyer (*pro hac vice forthcoming*)
Alex Dravillas (*pro hac vice forthcoming*)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza Suite 4100
Chicago, Illinois 60606
(312) 741-5220
sam@kellerpostman.com
adj@kellerpostman.com

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 3, 2025, copies of the foregoing Motion were served on all counsel of record via ECF, including:

Adam Bookbinder (BBO No. 566590)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
jwolosz@choate.com
abookbinder@choate.com

*Attorneys for Defendant Cape Cod Healthcare, Inc.*

        */s/ J. Tucker Merrigan*
        J. Tucker Merrigan