**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JANE DOE, JOHN DOE, JAN DOE, JAMES DOE, AND JANET DOE, individually and on behalf of all others similarly situated,** | § | |
| ***Plaintiffs,*** | § | **C.A. No. 1:25-CV-10445-RGS** |
| **v.** | § | |
| **CAPE COD HEALTHCARE, INC.,** | § | |
| ***Defendant.*** | | |

---

**PLAINTIFFS' OPPOSITION**
**TO CAPE COD'S MOTION TO DISMISS**

---

## TABLE OF CONTENTS

Facts ..................................................................................................................1

Legal Standard ......................................................................................................3

Argument & Authorities .......................................................................................3

A. There are plausible allegations of Cape Cod's intent to commit a crime or tort. ..........................................................................................................4

1. The complaint contains viable allegations of Cape Cod's culpable intent. ..........................................................................................4

2. Cape Cod mischaracterizes the allegations in the complaint......................6

3. Cape Cod misconstrues the law. ..........................................................7

B. Plaintiffs plausibly allege that Cape Cod committed a crime and torts. ................10

Conclusion ..........................................................................................................12

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 1, 3
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 1
*Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc.*,
32 F.4th 99 (1st Cir. 2022) ... 10
*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 6, 7
*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ... 9, 11
*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ... 5, 10
*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) ... 8
*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 8
*Gay v. Garnet Health*,
No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ... 11
*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ... 8
*In re Group Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ... 5, 6, 7, 10
*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ... 9
*Koger, Inc. v. Klco*,
No. CIV.A.08-4175(SRC), 2009 WL 905061 (D.N.J. Mar. 9, 2009) ... 11
*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ... 12
*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ... 12
*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1 (1st Cir. 2011) ... 3, 10, 12
*Okash v. Essentia Health* ...
No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ... 12
*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ... 10, 11
*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024) ... 8

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).......................... 8
*Saldivar v. Racine*,
818 F.3d 14 (1st Cir. 2016)........................................................................................... 3
*Sun W. Mortg. Co., Inc. v. Matos Flores*,
No. CV 15-1082 (GAG), 2016 WL 1030074 (D.P.R. Mar. 10, 2016)...................................... 8
*TLS Mgt. v. Rodriguez-Toledo*,
260 F. Supp. 3d 154 (D.P.R. 2016)................................................................................... 7
*United States v. Councilman*,
418 F.3d 67 (1st Cir. 2005)........................................................................................... 12
*United States v. Giordano,*
416 U.S. 505 (1974)....................................................................................................... 3
*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014)........................................................................ 4, 6, 7, 9
*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986).................................................................................... 9
*Vazquez-Santos v. El Mundo Broad. Corp.*,
283 F. Supp. 2d 561 (D.P.R. 2003)................................................................................. 10
*Villarini v. Dep't of Educ. of Puerto Rico*,
628 F.3d 25 (1st Cir. 2010)............................................................................................ 3
*Williams vs. TMC Health,*
23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024)......................................... 8

Statutes

18 U.S.C. § 2511(1)(a)...................................................................................................... 3
18 U.S.C. § 2511(2)(d) ............................................................................................... 11, 12
42 U.S.C. § 1320d-6 ...................................................................................................... 2, 5

Rules

FED. R. CIV. P. 8 ............................................................................................................. 1
FED. R. CIV. P. 12(b)(6) .................................................................................................... 1

The following material facts are all stated in Plaintiffs' First Amended Complaint. They provide fair notice of Plaintiffs' Federal Wiretap Act claim against defendant Cape Cod Healthcare, Inc. ("Cape Cod"). FED. R. CIV. P. 8; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). They further support plausible claims that Cape Cod violated the crime-tort exception to the Federal Wiretap Act, particularly when "accepted as true." *Iqbal*, 556 U.S. at 678. Cape Cod's motion to dismiss the Federal Wiretap Act claim for an alleged failure to plead plausible allegations of the crime-tort exception should therefore be denied. FED. R. CIV. P. 12(b)(6).

## FACTS

Plaintiffs are patients of Cape Cod who used Cape Cod's website and patient portal in connection with their treatment. ECF No. 1-82, Pls.' First Am. Compl. ("Compl.") at ¶¶ 7–11; 14–18. They reasonably believed that the private, personally identifiable, medical information they provided via Cape Cod's website and patient portal would be kept confidential by Cape Cod. *Id.* at ¶¶ 184–94. Instead, without their knowledge or consent, Cape Cod used tracking tools throughout its website that collected Plaintiffs' private, personally identifiable medical information, such as "their status as patients, their physicians, their medical treatments, the hospitals they visited, and their personal identifies" and sent it to third parties like Facebook and Google. *Id.* at ¶ 3–4; 55.

Cape Cod "discloses [] protected health information through the deployment of various digital marketing and automatic rerouting tools embedded on its websites that purposefully and intentionally redirect patients' personal health information to third parties who exploit that information for advertising purpose." *Id.* at ¶ 4; ¶¶ 134–79 (detailing third-party exploitation).

Third parties such as Facebook and Google can combine plaintiffs' private health information with personal identifiers such as Facebook ID, IP Address, and device IDs. Compl. ¶ 167. "This is precisely the type of information that state and federal law require healthcare providers to de-identify to protect the privacy of patients." *Id.*

Cape Cod knew that by embedding Meta Pixel—a Facebook advertising tool—it was permitting Facebook to collect, use, and share Plaintiffs' and the Class Members' personal health information, including sensitive medical information and personally identifiable data. *Id.* at ¶ 168. Defendant made the decision to barter its patients' personal health information to Facebook because it wanted access to the Meta Pixel tool. *Id.; see also id.* at ¶ 157. This includes "enhanced online advertising services, including (but not limited to) retargeting and enhanced analytics functions." *Id.* at ¶ 203. While that bargain may have benefited Defendant and Facebook, it betrayed the rights of Plaintiffs and Class Members. *Id.* at ¶ 168.

Cape Cod's sharing of such information is a criminal violation of HIPAA, 42 U.S.C. § 1320d-6. *Id.* at ¶¶ 241.a., 242. Sharing Patients' protected health information with third parties such as Facebook and Google also violates Massachusetts law. *Id.* at ¶ 176 (citing G.L. c. 214, §1B; 241.b.–d (invasion of privacy and breach of confidentiality). Cape Cod "accessed, obtained, and disclosed Plaintiffs' and Class Members' Personal Health Information for the purpose of committing the crimes and torts described herein because it would not have been able to obtain the information or marketing services if it had complied with the law." *Id.* at ¶ 245.

Sharing such protected health information with third parties such as Facebook or Google is not "necessary for [Cape Cod] to maintain its healthcare website or provide medical services to patients." *Id.* at ¶¶ 180–81. Indeed, after Plaintiffs filed suit, Cape Cod removed the Facebook Meta Pixel from all pages on its website. *Id.* at ¶ 182. "Despite the wholly unnecessary nature of

the Meta Pixel for Defendant to run its business, Defendant willfully chose to implement Meta Pixel and other tracking technologies on its websites and aid in the disclosure of personally identifiable information and sensitive medical information about its patients, as well as the contents of their communications with Defendant, to third-parties, including Facebook." *Id.* at ¶ 183.

Based on Cape Cod's misconduct, Plaintiffs sued on behalf of themselves and similarly situated patients, bringing claims under Massachusetts and federal law, including the Federal Wiretap Act. *Id.* at ¶¶ 213–320. Cape Cod now seeks to dismiss just the Federal Wiretap Act claim. ECF No. 12, Def.'s Mem. Supp. Mot. Dismiss ("Mem.").

## LEGAL STANDARD

"To survive a motion to dismiss, [plaintiffs'] complaint 'must contain sufficient factual matter ... to state a claim that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016), quoting *Ashcroft*, 556 U.S. at 678 (second alteration in original). A claim has factual plausibility "when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29 (1st Cir. 2010). All inferences are drawn in favor of the non-movant, and the Court considers the "cumulative effect" of the allegations. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).

## ARGUMENT & AUTHORITIES

Plaintiffs allege that Cape Cod violated the Federal Wiretap Act. *See* Compl., ¶¶ 230–249. (citing 18 U.S.C. § 2511(1)(a), (c) & (d)). Section 2511(1) of the Federal Wiretap Act prohibits the interception of wire, oral or electronic communications "except those specifically provided for in the Act." *United States v. Giordano,* 416 U.S. 505, 514 (1974). Cape Cod

counters that the Wiretap Act permits recordings where one party consents, and that Plaintiffs have failed to adequately allege the crime-tort exception to one-party consent. Mem. at 5–15.

Cape Cod is wrong. "The one-party consent rule does not apply, . . . if the recording party intercepted the communication 'for the purpose of committing any criminal or tortious act.'" *United States v. McHugh*, 57 F. Supp. 3d 95, 99 (D. Mass. 2014) (quoting 18 U.S.C. § 2511(2)(d)). There are plausible allegations that: (A) Cape Cod intended to disclose to third parties Plaintiffs' protected health information without consent when Cape Cod intercepted such protected health information while using website tracking technology; and (B) the disclosure of such information is criminal and tortious.

**A. There are plausible allegations of Cape Cod's intent to commit a crime or tort.**

**1. The complaint contains viable allegations of Cape Cod's culpable intent.**

At trial, Cape Cod will be liable if its "primary motivation" or a "determinative factor" in its decision to record was the intent to commit a criminal or tortious act. *See McHugh*, 57 F. Supp. 3d at 99–100 (reconsideration of motion to suppress evidence in criminal proceeding).

Plaintiffs have alleged the primary motivation, or a determinative factor, for intercepting Cape Cod's patients' communications about treatment is to share such content with third-party marketing companies without the patients' consent. *E.g.*, Compl. ¶ 183 (Cape Cod "willfully chose to implement [Facebook tracking technology] and other tracking technologies on its websites ***and aid in the disclosure of personally identifiable information and sensitive medical information about its patients, as well as the contents of their communications with Defendant, to third-parties, including Facebook***.) (emphasis added); *id.* at ¶ 4 (Cape Cod "discloses [] protected health information through the deployment of various digital marketing and automatic rerouting tools embedded on its websites that purposefully and intentionally

redirect patients' personal health information to third parties who exploit that information for advertising purposes."); *id.* at ¶ 160 (identifying Facebook and Google). Disclosure of protected health information without prior patients' consent violates federal law. *Id.* at ¶ 167 ("This is precisely the type of information that state and federal law require healthcare providers to de-identify to protect the privacy of patients."); *id.* at ¶¶ 241.a., 242 (citing criminal violation of Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6). Such sharing is also tortious under Massachusetts law on invasion of privacy and breach of confidentiality grounds. Compl. at ¶ 241.b.–d. Critically, Cape Cod "accessed, obtained, and disclosed Plaintiffs' and Class Members' Personal Health Information for the purpose of committing the crimes and torts [cited above] because [Cape Cod] would not have been able to obtain the information or marketing services if it had complied with the law." Compl. at ¶ 245.

Such allegations of disclosure to third parties in violation of law have been found to adequately plead culpable intent under the Federal Wiretap Act. "A defendant's criminal or tortious purpose of 'knowingly ... disclos[ing] individually identifiable health information to another person,' 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (collecting cases denying a motion to dismiss Federal Wiretap Claim). Indeed, Plaintiffs' allegations here are markedly similar to those found sufficient in another federal court. In *In re Group Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023), it was significant that the plaintiffs alleged "'the use of patient data for advertising in the absence of express written consent,' and the use 'for marketing and revenue generation was in violation of HIPAA and an invasion of privacy.'" As here, "Plaintiffs also allege[d] that [defendant] 'would not have been able to obtain the information or the marketing services if it had complied with the law.'" *Id.*

Plaintiffs specifically listed "the various laws they allege [defendant] purposefully violated and then continue for multiple paragraphs explaining how these laws were violated." *Id.* at 719–20.

Moreover, intercepting communications using Facebook or Google tracking technologies is gratuitous to the healthcare services Cape Cod should be providing its patients. *Id.* at ¶¶ 180–81 (sharing protected health information with third parties such as Facebook or Google is not "necessary for [Cape Cod] to maintain its healthcare website or provide medical services to patients."). This underscores that a "determinative factor" in Cape Cod's decision to intercept such information was to share it with others illicitly. *See, e.g.*, *id.* at ¶ 183 ("Despite the wholly unnecessary nature of the Meta Pixel for Defendant to run its business, Defendant willfully chose to implement Meta Pixel and other tracking technologies on its websites and aid in the disclosure of personally identifiable information and sensitive medical information about its patients, as well as the contents of their communications with Defendant, to third-parties, including Facebook."); *See also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) (holding that one-party consent was "not a defense to [the] Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal and tortious act").

Accepting these allegations as true, the current complaint sufficiently pleads that Cape Cod "intercepted the [healthcare] communication[s] 'for the purpose of committing [a] criminal or tortious act.'" *McHugh*, 57 F. Supp. 3d at 99.

**2. Cape Cod mischaracterizes the allegations in the complaint.**

Rather than engage with the allegations actually found in the complaint, Cape Cod argues that Plaintiffs do not plausibly allege "the distinct purpose of violating HIPAA or perpetrating a tort, like invasion of privacy or breach of confidentiality." Mem. at 8. Cape Cod

continues, mischaracterizing the complaint as, "alleg[ing] only that [Cape Cod used tracking technology] . . . to operate more effectively." *Id.* This self-evidently is not true. *See supra* Part A.1. Motions to dismiss are decided on what the complaint actually says, not what the defendant claims it says.

### 3. Cape Cod misconstrues the law.

Cape Cod's characterizations of controlling law do not fare much better.

First, multiple motivations for unlawful activities do not excuse Cape Cod's misconduct. *Contra* Mem. at 6–7 (referring to "market research and consumer analysis" purpose and contending that an allegation "that a defendant intended to reap a financial benefit from the alleged interception is not sufficient to trigger the crime-tort exception") (citations omitted). Were that so, any defendant could defeat a Wiretap Act claim by pointing to an additional motivation for its misconduct.[1] Federal courts, in this circuit and others, have not interpreted the Wiretap Act this way. *See e.g., TLS Mgt. v. Rodriguez-Toledo*, 260 F. Supp. 3d 154, 165 (D.P.R. 2016) (denying motion to dismiss when claim alleged that the defendants "benefit[ted] economically from the" confidential information "they intercepted" and goes on that the "alleged tortious conduct violated several Puerto Rico statutes"); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("Plaintiffs have adequately alleged that Google's association of their data with preexisting user profiles violated state law . . . intrusion upon seclusion, and invasion of privacy"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (citation omitted) ("[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose."). A plaintiff need only allege a

[1] To use Cape Cod's example, one who blackmails is often motivated by personal enrichment. Mem. at 7. That ultimate financial motive clearly does not render meaningless his intermediate purpose of committing a crime.

"primary motivation" or "determining factor," as Plaintiffs here have done.

In this regard, Cape Cod's reliance on unreported decisions from other circuits is misguided. Mem. at 6. *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) found the allegations supported only a "sole[]" purpose of benefitting "Kaiser in better reaching and serving its patients." Here, in contrast, Cape Cod disclosed patient data to Facebook and Google without consent for third-party exploitation. Compl. at ¶¶ 134–79. Likewise, the allegations in *Williams vs. TMC Health*, D. Ariz., No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) are distinguishable. There, the court found there were only allegations regarding marketing purposes and to increase one's own profits, unlike here. *Compare Williams*, 2024 WL 4364150, at *4, *with supra* Part A.1.

The same is true of other cases cited by Cape Cod. *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) ("Plaintiffs aver that Defendant's motivations were to improve their marketing and advertising efforts."); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363 (E.D.N.C. 2024) (only non-conclusory allegations were that defendant disclosed the class members' information for commercial use or gain); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 (N.D. Cal. 2024) (addressing Google's purpose); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001) (defendant had "been consciously and purposefully executing a highly-publicized market-financed business model"). Even the one unreported decision out of the District of Puerto Rico is distinguishable. *Sun W. Mortg. Co., Inc. v. Matos Flores*, No. CV 15-1082 (GAG), 2016 WL 1030074, at *5 (D.P.R. Mar. 10, 2016) (only non-

conclusory allegations were that the interception was for economic gain).

Moreover, "focusing on a defendant's intent at the time of the interception" or its "conscious objective" is not a prevailing argument for Cape Cod. Mem. at 7 (citing *McHugh*, 57 F. Supp. 3d at 100; *United States v. Vest*, 639 F. Supp. 899 (D. Mass. 1986), *aff'd,* 813 F.2d 477 (1st Cir. 1987); and *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)); *see also Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act."). At the time of interception here—when Cape Cod effectively "hit record"—the use of tracking technologies was unnecessary for Cape Cod to run its hospital or provide care to its patients. Compl. at ¶¶ 180–81. That is established in part because Cape Cod has since removed the tracking technology from its website. *Id.* at ¶ 182. "Despite the wholly unnecessary nature" of the tracking technology for "Cape Cod to run its business, [Cape Cod] willfully chose to implement Meta Pixel and other tracking technologies on its websites and aid in the disclosure of personally identifiable information and sensitive medical information about its patients . . . to third-parties, including Facebook." *Id.* at ¶ 183. And the only way Cape Cod could benefit from third-parties' data aggregation was by violating the law to share intercepted data with such third parties without patient consent. *Id.* at ¶ 245. The cumulative effect of these allegations, when accepted as true, support a viable inference that at the time of the interception, Cape Cod's conscious objective was to use tracking technology to intercept its patients' information for the unlawful purpose of disclosing it to others.

Finally, Cape Cod's statutory construction argument falls flat. Mem. at 10–11. First,

courts do not need to defer to the canon of absurdity when the text of the statute is clear, and there is no serious argument here that the Federal Wiretap Act is unclear in any material way. *See, e.g.*, *Blackstone Headwaters Coal., Inc. v. Gallo Builders, Inc.*, 32 F.4th 99, 108 (1st Cir. 2022). Second, it is not absurd to expect a hospital to avoid actions that will disclose patient health information to third parties without patient consent. *See, e.g.*, Compl. at ¶¶ 3, 20–22, 173, 187–88, 190, 240. Third, the Court does not engage in a weighing of "competing sets of inferences" on a motion to dismiss. *Compare* Mem. at 10, *with Ocasio-Hernandez*, 640 F.3d at 14 (all inferences drawn in favor of the non-movant); *see also In re Group Health Plan Litigation*, 709 F. Supp. 3d 707, at 720 (ultimate determination of fact questions occur after discovery).

**B. Plaintiffs plausibly allege that Cape Cod committed a crime and torts.**

To succeed at trial, a "plaintiff must demonstrate that the defendants acted with the purpose of committing a criminal or tortious act other than the recording of the communication itself." *Vazquez-Santos v. El Mundo Broad. Corp.*, 283 F. Supp. 2d 561, 566 (D.P.R. 2003) (at motion for summary judgment stage). Here, Cape Cod intercepted personal health information for the independent criminal or tortious act of sharing it with third parties such as Facebook and Google, without patients' prior, informed consent. *See supra* Part. A.1. This is independent of the recording of the communication itself. *See, e.g.*, *Cooper*, 742 F. Supp. 3d at 380–83.

Cape Cod argues that because the unauthorized disclosure was simultaneous with the interception, there was no harm "independent from the interception itself." *See* Mem. 11–13. But disclosure to third parties entails a separate and distinct act beyond recording for the offender's own use or enjoyment. *See, e.g.*, *See, e.g., R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) (holding that

an alleged HIPAA violation constituted a "further impropriety" independent from the interception when denying motion to dismiss); *Gay v. Garnet Health*, No. 23-CV-06950 (NSR), 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (sending communications to Facebook, Google, and others is "secondary to the interception"). In other words, disclosure to others is an independent act beyond just hitting record—even if technology permits these acts to occur simultaneously.

Once again, Cape Cod's statutory construction objections fail them. *See* Mem. at 14. The operative provision of the statute does not include the past tense, "intercepted," as Cape Cod claims. *See id.* Instead, it includes the present passive tense, "is intercepted." 18 U.S.C. § 2511(2)(d) (one-party recording is permissible "unless such communication ***is intercepted*** for the purpose of committing any criminal or tortious act") (emphasis added); *see also Koger, Inc. v. Klco*, No. CIV.A.08-4175(SRC), 2009 WL 905061, at *4 (D.N.J. Mar. 9, 2009) (recognizing that "are issued" is a present passive tense construction). The present passive tense often emphasizes the state the subject is in—not sequential activity that has ended before a second act occurs. Thus, the focus of the operative statutory provision is not that there is one interception that concludes and a second act that occurs with a criminal or tortious purpose; the focus is on the offender's mens rea while recording. 18 U.S.C. § 2511(2)(d) (one-party recording is permissible "unless such communication is intercepted ***for the purpose of*** committing any criminal or tortious act") (emphasis added); *see Caro*, 618 F.3d at 99 ("At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act."). In short, Cape Cod's erroneous statutory construction "conflates the crime-tort exception's 'separate and independent' component with its 'temporal' component. . . . [T]he 'temporal thread' focuses on when the intent to disclose was formed." *Prime Healthcare Services, Inc.*,

2025 WL 103488, at *6. It is irrelevant that interception is contemporaneous with disclosure, so long as a culpable mind accompanies the interception.

What is more, since the text of the statute is clear, it presents "no grievous ambiguity." *United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005). A party cannot record another's communications with a culpable mind bent towards using the communication criminally or tortiously, full stop. 18 U.S.C.A. § 2511(2)(d). The rule of lenity does not apply. *Contra* Mem. at 15.

Notably, none of the cases cited by Cape Cod—which in any event are all non-binding on this Court—command a contrary result. In *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095–96 (W.D. Wash. 2024), the court found that plaintiffs failed to point to any legal authority recognizing that recording is separate from transmission to third parties. The same court found plaintiffs still failed to cite to such authority after repleading. *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025). That is not the case here. *See supra* at 10–11 (citing *Prime Healthcare* and *Gay*, for example). Finally, in *Okash v. Essentia Health*, plaintiffs had no more than conclusory allegations of independent criminal or tortious conduct. No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (citing paragraph 122 of plaintiffs' amended complaint).

In short, Plaintiffs have plausibly alleged a separate (and culpable) act beyond mere interception and thereby have plausibly alleged that Cape Cod committed the crime of HIPAA violations and the torts of violating Cape Cod's patients' medical privacy.

**CONCLUSION**

Pleadings must include more than conclusory allegations. Here, Plaintiffs specifically

alleged that Cape Cod used tracking technology to disclose patients' protected health information to third parties such as Facebook and Google, which violates both federal and Massachusetts law. The Federal Wiretap Act does not carve out such misbehavior from liability. Plaintiffs therefore ask the Court to deny Cape Cod's motion to dismiss.

**Respectfully submitted,**

*/s/ J. Tucker Merrigan*
J. Tucker Merrigan, BBO# 681627
Erin E. McHugh, BBO# 703701
Thomas T. Merrigan, BBO# 343480
**SWEENEY MERRIGAN LAW**
268 Summer St. LL
Boston, MA 02210
Tel: (617) 391-9001
Fax: (617) 357-9001
tucker@sweeneymerrigan.com
emchugh@sweeneymerrigan.com
tom@sweeneymerrigan.com

Foster Johnson (*pro hac vice forthcoming*)
State Bar No. 289055
David Warden (*pro hac vice forthcoming*)
Texas Bar No. 20856750
Nathan Campbell (*pro hac vice forthcoming*)
Texas Bar No. 24097455
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 -Phone
(713) 655-0062 – Fax
fjohnson@azalaw.com
dwarden@azalaw.com
ncampbell@azalaw.com

Seth A. Meyer (*pro hac vice forthcoming*)
Alex Dravillas (*pro hac vice forthcoming*)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5226
sam@kellerpostman.com

adj@kellerpostman.com

**COUNSEL FOR PLAINTIFFS JANE DOE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 16, 2025, a copy of this filing was filed electronically and served on all counsel of record via ECF, including:

Adam Bookbinder (BBO No. 566590)
April DeLuca
Mark W. McPherson
Samuel N. Rudman
CHOATE, HALL & STEWART LLP
Two International Place
100-150 Oliver Street
Boston, MA 02110
Telephone: 617-248-5000
abookbinder@choate.com
adeluca@choate.com
srudman@choate.com
mmcpherson@choate.com

*Counsel for Cape Code Healthcare, Inc.*

*/s/ J. Tucker Merrigan*
J. Tucker Merrigan