UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10445-RGS

DEBRA GOULART AND MICHAEL GARBITT,
Individually and on behalf of all others similarly situated

v.

CAPE COD HEALTHCARE, INC.

MEMORANDUM AND ORDER ON MOTION TO DISMISS

June 24, 2025

STEARNS, D.J.

In this putative class action, plaintiffs Debra Goulart and Michael Garbitt claim that defendant Cape Cod Healthcare, Inc. (CCHC), through internet-tracking technologies, unlawfully disclosed their private health-related information and personally identifiable information to Facebook and Google, in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 (ECPA). Before the court is CCHC's motion to dismiss the ECPA claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will allow the motion.

## BACKGROUND

Goulart and Garbitt allege the following facts in their Second Amended Complaint (SAC). *See* Dkt. # 30 (SAC). For the purposes of the present

motion, the court accepts the facts as true. CCHC is a not-for-profit, healthcare system that provides medical services for residents and visitors of Cape Cod.[1] SAC ¶ 6. It also owns and operates capecodhealth.org, a public website featuring an online patient portal, which is password protected. *Id.* ¶¶ 19, 26, 29, 158. Visitors with log-in credentials may search the website for physicians, research services and treatment options, and pay medical bills. *Id.* ¶ 22. Users of CCHC's patient portal may also make appointments, access medical records, view lab results, and exchange communications with healthcare providers. *Id.* ¶ 23.

The CCHC website and patient portal embed digital marketing trackers created by Facebook (which is owned by Meta) and Google. *Id.* ¶¶ 35, 42, 45, 49. These "tracking pixels" collect dozens of data points about individual website users who interact with the site and that are then shared with third parties. *Id.* ¶ 43. Specifically, CCHC deploys on its website and patient portal Meta Pixel, one of the world's most ubiquitous tracking pixels. *Id.* ¶¶ 44, 45, 49. Meta Pixel allows CCHC and Facebook "to secretly track, intercept,

---

[1] CCHC operates a number of facilities on Cape Cod, including hospitals such as Cape Cod Hospital, Falmouth Hospital, JML Health Care Center, Cape Cod Surgery Center, Davenport-Mugar Cancer Center, Falmouth Hospital Rehabilitation Center, Cape Cod Healthcare Urgent Care-Falmouth, Cape Cod Healthcare Urgent-Care Harwich, and Cape Cod Healthcare Pharmacy.

record, and transmit every patient communication made on Defendant's websites." *Id.* ¶ 45.  For example, when plaintiffs accessed CCHC's website, Meta Pixel software directed the patients' browsers to send private information, such as "the type of medical appointment the patient made, the date, and the specific doctor the patient was seeing" to third-party advertising companies, like Facebook. *Id.* ¶ 27.  The installation of the tracking codes on CCHC's patient portal "resulted in disclosures of patients' personal health information, including their patient status, whenever [patients] logged into the patient portal for routine purposes such as reviewing medical records, checking lab results, and communicating with their doctors." *Id.* ¶ 49.  The transmission of information to Facebook is "instantaneous" and done without the user's knowledge – Facebook often receives the information before the healthcare provider. *Id.* ¶¶ 104, 110.  In exchange for installing Meta Pixel on its websites, CCHC receives from Facebook "analytics about the ads they have placed on Facebook and Instagram and tools to target people who have visited their website." *Id.* ¶ 112.  Facebook uses the disclosed information to track user data and communications for marketing purposes. *Id.* ¶ 41.

In addition to Meta Pixel, CCHC also uses Google Analytics and Google Tag Manager on its website and patient portal to "track[] and disclose[]

patient activity, IP addresses, cookies, geolocation, and other unique device identifiers" to Google. *Id.* ¶¶ 50-54, 158. Like Facebook, Google uses the disclosed information to track user data and communications for marketing purposes. *Id.* ¶ 41.

Goulart and Garbitt have been treated by CCHC's physicians. *Id.* ¶¶ 7-11. Goulart used CCHC's website to locate providers, schedule appointments, pay for medical services, and research treatments related to knee replacement recovery as well as cancer screening procedures. *Id.* ¶ 11. She used the patient portal to check lab results for biopsies and bone density tests. *Id.* After using CCHC's website and patient portal, she began receiving "online advertisements related to her research, including knee replacement-related pain." *Id.* Garbitt used CCHC's website to research the credentials of his primary care physician and cardiologist. *Id.* ¶ 12. He used the patient portal to follow up on treatment he received from CCHC and to learn the results of tests that he had undergone at Cape Cod Hospital regarding his heart condition. *Id.* Goulart and Garbitt believed that their interactions with CCHC's website were privileged and would not be shared with anyone other than their healthcare providers and medical staff. *Id.* ¶ 13. They did not consent to CCHC sharing their information with Facebook or Google. *Id.*

On December 8, 2022, the original plaintiff filed this putative class action under the pseudonym Jane Doe in the Barnstable Superior Court against CCHC. *See* Dkt. # 1, Ex. 4 at 1-2. The original Complaint set out six counts: violation of the Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272, § 99; violation of the Massachusetts Right to Privacy Law, Mass. Gen. Laws ch. 214, § 1B; and common law breach of fiduciary duty and/or duty of confidentiality, breach of express contract, breach of implied contract, and unjust enrichment. *See id.* at 40-59. On January 12, 2023, CCHC removed the case from the Barnstable Superior Court to the United States District Court for the District of Massachusetts. *See* Dkt. # 1 at 2. On January 25, 2023, the District Court remanded the case to the Barnstable Superior Court. *See* Dkt. # 1 at 2. Following remand, the case was transferred to the Business Litigation Session of the Suffolk County Superior Court. *See id.* On January 31, 2025, Jane Doe amended the Complaint to include a claim under the ECPA and withdrew the Massachusetts Wiretap Act claim. *See id.* at 3. On February 24, 2025, CCHC removed the case from the Suffolk County Superior Court to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §§ 1331, 1441(a), 1446, and 1367. *See id.* at 1.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## DISCUSSION

The ECPA provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept wire, oral, or electronic communication." *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003),

6

quoting 18 U.S.C. § 2511(1)(a). However, there are exceptions to liability – consent and the one-party exception, which applies when the person intercepting the communication is also a "party to the communication." 18 U.S.C. § 2511(2)(d); *see In re Pharmatrak, Inc.*, 329 F.3d at 18. The one-party exception has its own carve-out – the crime-tort exception. *See* 18 U.S.C. § 2511(2)(d). Under this exception, a party to a communication is still liable under the ECPA when a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

The crime-tort exception requires a plaintiff to "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (emphasis in original), quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Specifically, "either the 'primary motivation' or a 'determinative factor' in the actor's decision to record [is] the intent to commit a criminal or tortious act." *United States v. McHugh*, 57 F. Supp. 3d 95, 99-100 (D. Mass. 2014); *see Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (holding that "where the taping is legal, but is done for the purpose of

7

facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

The parties dispute the applicability of the crime-tort exception. *See* Dkt. # 12 at 9; Dkt. # 20 at 8. CCHC argues that the crime-tort exception does not apply because plaintiffs do not plausibly allege that CCHC intended to commit a crime or tort at the time of the interception. *See* Dkt. # 12 at 5. Goulart and Garbitt contend that the Complaint plausibly alleges that CCHC intended to disclose their protected health information to third parties and that disclosure of such information is ipso facto criminal and tortious. *See* Dkt. # 20 at 8.

The Complaint fails for a basic reason. It fails to plausibly allege that CCHC's "primary motivation" or "determinative factor" in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience. The *Twombly-Iqbal* standard requires more than mere conclusory allegations. Rather, it puts the burden on plaintiffs to assert factual allegations that give plausible heft to their claims of personal injury. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216

(4th ed. May 2025 update); *Iqbal*, 556 U.S. at 678-679. Here, plaintiffs have failed to plead with any plausibility that the crime-tort exception applies. *See, e.g., Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (finding that the use of tracking technologies to obtain personal data, increase profits through sophisticated and targeted advertising, and to improve website analytics point to a non-criminal, non-tortious purpose); *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. March 18, 2025) (dismissing ECPA claim because, by plaintiff's own account, the trackers were used by defendant to benefit its marketing and advertising purposes, not for the purpose of knowingly committing a violation of the Health Insurance Portability and Accountability Act (HIPAA)).[2]

Because there are no factual allegations in the Complaint from which the court could conclude that CCHC, a non-profit hospital system, installed Meta Pixel and software-tracking technology with the "primary motivation"

---

[2] Plaintiffs aver in the Complaint that CCHC "accessed, obtained, and disclosed plaintiffs' Personal Health Information" to Facebook and Google "for the purpose of committing the crimes and torts described herein [criminal violation of HIPAA, invasion of privacy, Mass. Gen. Laws ch. 214, § B; breach of confidentiality of medical records, Mass. Gen. Laws ch. 111, § 70E; and breach of the common law duty of confidentiality] because it would not have been able to obtain the information or the marketing services if it had complied with the law." SAC ¶¶ 235, 238-239. This is a prototypical example of the type of conclusory pleading the *Twombly-Iqbal* standard rejects. *See Tambone*, 597 F.3d at 442.

of knowingly committing a violation of HIPAA or perpetrating a tort, the Complaint fails. There are facts alleged by plaintiffs supporting the proposition that CCHC used the trackers for purposes of marketing and advertising. For example, the Complaint states that: CCHC used Meta Pixel and Google's software tools to knowingly disclose information that allows Facebook, Google, and other advertisers to target patients with ads, *see* SAC ¶ 159; CCHC "made the decision to barter its patients' PII/PHI to Facebook because it wanted access to the Meta Pixel tool," *see* SAC ¶ 162; and in exchange for disclosing PII about its patients, CCHC had been "compensated by Facebook with enhanced online advertising services, including (but not limited to) retargeting and enhanced analytics functions," *see* SAC ¶ 197. But as previously explained, commercial purposes or advantages are not the stuff of which a crime-tort is made.[3]

---

[3] The court emphasizes that it is unconvinced that the Complaint sufficiently alleges an independent crime or tort beyond the alleged interception itself. Plaintiffs rely on an out-of-district court case for the proposition that a violation of HIPAA constitutes a "further impropriety" independent and separate from the healthcare company's interception, and thus satisfies the crime-tort exception. *See* Dkt. # 20 at 14-15, citing *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025). However, such a violation does not constitute an act "secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits." *Caro*, 618 F.3d at 98. Plaintiffs' allegations that CCHC violated HIPAA and various torts encompass only the simultaneous interception and disclosure of information to Facebook and Google – no data was alleged to have been independently used in a crime or tort committed by

## ORDER

For the foregoing reasons, CCHC's motion to dismiss the ECPA claim is <u>ALLOWED</u>.  Consistent with the guidance of the First Circuit, the court will decline supplemental jurisdiction over the remaining state claims and direct the Clerk to remand these claims to the Suffolk County Superior Court. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

CCHC.  *See Okash v. Essentia Health*, 2025 WL 642913, at *3 (D. Minn. Feb. 27, 2025).